Joel B. Robbins, Esq. (011065)
Anne E. Findling, Esq. (010871)
**ROBBINS & CURTIN, p.l.l.c.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona  85012
Tel: 602/285-0100
Fax: 602/265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Mary Ellen Klatt, as the personal representative of the Estate of John Klatt, <br><br> Plaintiff, <br><br> vs. <br><br> Joseph Arpaio, in his individual and official capacities as Sheriff of Maricopa County; Maricopa County, a municipality; John Doe Core Officer, in his individual capacity as a detention officer with the Maricopa County Sheriff's Office, <br><br> Defendants. | No. _____ <br><br> **COMPLAINT** <br><br> **Jury Trial Demanded** |

For her Complaint against Defendants, Plaintiff Mary Ellen Klatt alleges as follows:

## PARTIES

1. John Klatt was an individual who, at the time of the incidents at issue, resided in the County of Maricopa, State of Arizona.  John, at the time of his death, was a 50-year old male who died on January 18, 2014, while in the custody of the Maricopa County Sheriff's Office.

2. Mary Ellen Klatt, a resident of Maricopa County, Arizona, is the sister of

1  John, the decedent, and is the personal representative of the Estate of John Klatt.

2      3.    Plaintiff Estate of John Klatt is a legal entity organized under the probate
3  laws of the State of Arizona.

4      4.    Defendant Sheriff Joseph Arpaio is the duly elected sheriff of Maricopa
5  County, Arizona, and is named in his individual and official capacities, and at all times
6  referenced herein was acting under the color of law.

7      5.    Defendant Arpaio is a state actor and is the final policymaker for the
8  Maricopa County Sheriff's Office ("MCSO") and is permitted to exercise his authority as
9  Sheriff through the use of deputies and detention officers.

10      6.    Defendant John Doe Core Officer is a detention officer who at all times
11  relevant to this Complaint was acting under the color of law as a detention officer with
12  the Maricopa County Sheriff's Office.  The identity of this defendant will be amended as
13  discovery establishes the true name and identity of this individual.

14      7.    The identities of other potentially responsible parties, including but not
15  limited to, other detention officers, may be added as discovery establishes that any such
16  officer acted with deliberate indifference to the safety of the decedent, John Klatt.

17      8.    The individual defendants are state actors as that term is used in the
18  jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.  They were acting at all
19  times under color of state law.  They are named individually and in their respective
20  capacities as employees of their respective agencies.

**JURISDICTION AND VENUE**

22      9.    The events that form the basis of Plaintiff's Complaint occurred in
23  Maricopa County, State of Arizona.  All defendants currently reside or work, or resided
24  or worked at relevant times, within the State of Arizona. Thus, venue is proper in the
25  District Court of Arizona pursuant to U.S.C. § 1391(b).

26      10.    This action arises under the Constitution of the United States, particularly
27  the Fourth, Eighth, and Fourteenth Amendments, and under the laws of the United States,
28  particularly the Civil Rights Act, 42 U.S.C. § 1983.

11. This Court has jurisdiction over Plaintiff's federal civil rights claim pursuant to 28 U.S.C. §§ 1331, 1343, and 144.

**FACTUAL BACKGROUND**

**A.   Inmate Classification Within The Maricopa County Jail System**

12. The Maricopa County jail system, under the control and jurisdiction of the Maricopa County Sheriff's Office, consists of various facilities, including the Lower Buckeye Jail ("LBJ"). Within the LBJ are housing units, including a unit for detainees needing or requesting administrative segregation or protective custody.

13. As of January 18, 2014, Tower 21 at LBJ was an administrative segregation unit within the Maricopa County jail system.

14. One group of incoming inmates who often require special protection are known as "NOC [nature of charge] inmates" or inmates with "sensitive charges." These inmates are typically charged with sexual offenses or crimes against children (or both).

15. Inmates charged with such offenses are at a greater risk of victimization by other inmates within the jail. Given the opportunity, some inmates will seek to beat or attack other inmates who are charged with such crimes, particularly offenses against children.

16. Defendants knew, and certainly should have known, about this risk to inmates with sensitive charges. In another case involving an inmate death in the Maricopa County Jail system, Gary Deland, an expert retained by Maricopa County and MCSO, testified:

> Q. Sex offenders are at risk within a jail or prison population?
>
> A. Ordinarily so, especially if they prey on children, rapists maybe not as much you, but if they prey on children in particular, they are at the bottom of food chain in jails and prisons.

17. Many inmates without "sensitive charges" also request or need segregation due to a variety of potential safety issues within general population, such as the potential for retaliation due to "snitching," gang attacks, or the like.

18. After detainees are booked into the Maricopa County jail system, a classification specialist determines whether the detainee requires maximum, medium, or minimum security housing. As noted above, some detainees request protective custody because they have concerns for their safety in general population.

19. After detainees are classified by a classification specialist, detainees are transported to the jail facility depending on various factors, including their classification level, and are assigned to a cell by the detention officer assigned to the core officer duty post.

20. By policy, the core officer is charged with the responsibility of assigning newly arrived detainees to specific cells within the unit.

21. With respect to NOC inmates or those with sensitive charges, the core officer has two options: to either place an NOC inmate in NOC housing, in which case the inmate will typically be placed in a cell with another inmate with similar sensitive charges. Alternately, the NOC inmate can be placed in administrative segregation; in such instance, the NOC inmate may be housed with an inmate who is in administrative segregation for reasons completely unrelated to the nature of their charges.

22. As Mr. Deland testified, it is preferable to place individuals with sensitive charges in with other inmates with sensitive charges: "We would look at their charges. If you're in there for a sex offense, we will generally isolate or house with other sex offenders."

23. The reason for this is simple: an inmate with the same or similar sex offense charge as another inmate has little reason to harm the other inmate; they are both presumably equally at risk.

24. However, within the Maricopa County jail system, inmates with sensitive charges, even if segregated, would not necessarily be placed into NOC housing with other inmates with similar charges. Rather, some NOC inmates would be placed into NOC housing; others, however, were simply assigned to administrative segregation, where they could be placed with other inmates who present an obvious danger to them.

25. In fact, under the policies, customs, and practices of the Maricopa County Sheriff's Office:

- When assigning a newly arrived detainee to a cell in the administrative segregation unit, the core officer would only consider documented "keep separates" and cell availability, with a preference for two detainees to a cell, and no other pertinent facts;
- The core officer would disregard facts and circumstances known or available to him or her when issuing a new cell assignment in the administrative segregation unit, such as the detainees' alleged crime, potential for violence, level of risk, and history of institutional violence or mental illness.
- The core officer does not assess cellmate compatibility when issuing a new cell assignment in the administrative segregation unit. Cellmate compatibility includes assessing the detainee's vulnerability and/or potential for violence with the information known or available.

26. Rather, every detainee in the administrative segregation unit is randomly assigned to a cell according to the policies, customs, or practices described herein.

**B.  Inmate John Klatt Is Classified and Then Killed By His Cellmate**

27. On or around November 25, 2013, Nike Black was booked into the Maricopa County jail system on charges of criminal trespass and assigned to general population at the Durango Jail facility.

28. Nike Black had a history of assaultive behavior, including assaulting a police officer and resisting arrest, and suffered from delusions and paranoia. Nike Black also had a history of institutional violence and "problems getting along with others."

29. On or around December 12, 2013, Nike Black requested and was assigned to protective custody in the administrative segregation unit in Tower 21 at the LBJ.

30. On or around January 2, 2013, hours before being released, Nike Black was

physically violent with detention officer Grubbs, serial number A8958, in a courtroom at the Maricopa County Superior Court.

31. On September 19, 2013, John Klatt was booked into the Maricopa County jail system on sensitive charges. John Klatt requested protective custody because he had reason to believe he was in imminent physical danger from other detainees in general population due to the nature of his charges.

32. Defendant John Doe core officer assigned Nike Black to Cell #15 with John Klatt, in the A Pod of Tower 21 at the LBJ, based on availability, a preference for double occupancy and without considering all facts and circumstances known to him or her, including but not limited to Nike Black's potential for violence.

33. Upon information and belief, Nike Black's act of physical violence against detention officer Grubbs was not reviewed by classification. Nike Black was returned to cell #15 with John Klatt.

34. In the morning of January 18, 2014, Nike Black brutally assaulted John Klatt, by beating, fracturing John Klatt's face, rib cage, and spine, and stabbing two pencils in John Klatt's eye, injuring Klatt's brain. After assaulting John Klatt, Nike Black tied a bed sheet around John Klatt's neck and suffocated him.

35. John Klatt suffered pain from the unwarranted and unprovoked assault before Defendants responded to the cell.

36. Defendants knew or should have known of the substantial risk of violence posed by Nike Black.

37. Defendants knew of and disregarded the substantial risk of violence posed to John Klatt by assigning Nike Black to the same cell.

38. Detention officers assigned to Tower 21 did not respond to the assault in a timely fashion and only entered Cell #15 after Nike Black called for detention officers.

39. Defendant Arpaio and Defendant John Doe Core Officer, were and are aware of the substantial risk of violence to NOC inmates and inmates with sensitive charges.

40. Defendant Arpaio disregarded the substantial risk of violence by choosing to house some NOC inmates with only NOC inmates, but not all inmates with sensitive charges or NOC inmates.

41. Defendant John Doe Core Officer disregarded the substantial risk of violence by assigning Nike Black, a potentially violent inmate, with John Klatt, a vulnerable inmate with sensitive charges.

42. Defendants were deliberately indifferent to the constitutional rights of John Klatt by failing to act to protect John Klatt.

43. Upon information and belief, Defendant Arpaio does not address cell assignments with the detention officers or speak to individual detention officers when a dangerous cell assignment results in death or injury.

## CLAIM FOR RELIEF

### Count One
### 42 U.S.C. § 1983
### Civil Rights Act of 1871

44. The foregoing paragraphs are incorporated as though fully set forth herein.

45. The Due Process Clause of the Fourteenth Amendment to the United States Constitution forbids a state actor from being deliberately indifferent to the safety and security of a pretrial detainee.

46. Defendant John Doe Core Officer breached his duties under the Fourteenth Amendment when he, as described in detail above, assigned Decedent John Klatt to a cell with a non-NOC inmate, and an inmate with a long and lengthy history of violence. In essence, Defendant John Doe Core Officer placed Mr. Klatt, a NOC inmate, in as great or greater danger as if he had been assigned to general population.

47. Defendants Maricopa County and/or Defendant Arpaio were aware of prior instances of NOC inmates or inmates with sensitive charges being victimized because of their charges by general population detainees or detainees with dissimilar charges, but failed to segregate NOC inmates or inmates with sensitive charges from general

population detainees to prevent the recurrence of such incidents. The incident involving John Klatt would not have occurred except for the failure of Defendants Maricopa County and Defendant Arpaio to take action to prevent such occurrences.

48. Defendants Maricopa County and/or Defendant Arpaio, in his official capacity, have and did have, at the time of John Klatt's incarceration, a policy, custom, or practice of randomly assigning detainees to cells in the administrative segregation unit, despite knowing the substantial risk posed to NOC inmates or inmates with sensitive charges.

49. Defendant Arpaio, in his individual capacity was deliberately indifferent in failing to supervise and train jail officers in the appropriate, lawful, and constitutional policies and procedures for providing a safe environment for detainees in administrative segregation. Defendant Arpaio was deliberately indifferent to the safety of NOC inmates and inmates with sensitive charges assigned to administrative segregation, including John Klatt, by fostering, encouraging, ratifying, and knowingly accepting formal and informal jail policies condoning random cell assignments and indifference to the substantial risk posed to NOC inmates and inmates with sensitive charges.

50. As a result of Defendants' breach of the Fourteenth Amendment as described herein, John Klatt suffered emotional distress, terror, and extreme pain before his death. As a further result of Defendants' deliberate indifference, John Klatt died.

51. In doing the acts and making the omissions alleged herein, Defendant Sheriff Arpaio and Defendant John Doe Core Officer acted maliciously and with a wanton disregard for the rights, needs, and feelings of Plaintiff, and by reason thereof, Plaintiff demands exemplary and punitive damages in an amount to be proven at trial.

**Count Two**
**Gross Negligence**

52. The foregoing paragraphs are incorporated as though fully set forth herein.

53. Defendants owed a non-delegable duty for the care, custody, and control of pretrial detainees within the Maricopa County jail system. The duty for care, custody, and

control includes the duty to take reasonable steps to protect inmates from violent assault by other inmates, including appropriate classification and assignment.

54. Defendants knew or had reason to know that they were placing John Klatt in circumstances creating an unreasonable risk of bodily harm with a high probability that substantial harm would result.

55. Defendants unreasonably failed to protect John Klatt from unprovoked, unwarranted attack by Nike Black.

56. As a result of the negligence and/or gross negligence of Defendants, John Klatt suffered catastrophic injuries and ultimately died, resulting in harms and losses to Plaintiff, as representative of the Estate, and other statutory beneficiaries.

### Count Three
### Wrongful Death

57. The foregoing paragraphs are incorporated as though fully set forth herein.

58. This claim for relief is asserted against Defendants by Plaintiff individually and on behalf of the statutory beneficiaries of John Klatt, including his Estate.

59. Pursuant to A.R.S. § 12-611, *et seq.,* liability for wrongful death exists if a person's death is caused by "wrongful act, neglect or default." In this matter, Defendants' "wrongful act, neglect, or default" includes negligence and gross negligence as alleged in this Complaint.

60. In the absence of other statutory beneficiaries, a decedent's estate is entitled to maintain a wrongful death action pursuant to A.R. §§ 12-611, *et seq.*

### Count Four
### Survival Action, A.R.S. § 14-3110

61. The foregoing paragraphs are incorporated as though fully set forth herein.

62. Pursuant to A.R.S. § 14-3110, "every cause of action ... shall survive the death of the person entitled thereto or liable therefore, and may be asserted by … the personal representative of such person."

63. In this matter, the Defendants' wrongful acts and omissions constitute gross

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

negligence and violations of the United States and Constitution.

64. Mary Ellen Klatt, as personal representative of the Estate of John Klatt, is entitled to maintain the present survival action on behalf of John Klatt.

65. As a direct and proximate result of Defendants' wrongful acts and omissions, John Klatt sustained damages, including but not limited to economic loss and loss of income and opportunities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. For special damages, including but not limited to funeral and burial expenses;

B. For lost wages, income, and other economic losses;

C. For other general damages, including but not limited to pre-death pain and suffering, loss of enjoyment of life and wrongful death;

D. For exemplary damages to the extent permitted by law;

E. For taxable costs and pre- and post-judgment interest to the extent permitted by law;

F. For attorney's fees pursuant to 42 U.S.C. § 1988; and

G. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues in this matter triable to a jury.

RESPECTFULLY SUBMITTED: December 18, 2014

**ROBBINS & CURTIN, p.l.l.c.**


By:   /s/ Joel B. Robbins
      Joel B. Robbins
      *Attorneys for Plaintiff*

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267